Stephen D. ZOOK, Plaintiff–Appellant,
Cross–Appellee,

v.

Joseph T. BROWN, William V. Mosher
and Champaign County,
Defendants–Appellees, Cross–Appellants.

Nos. 88–1261, 88–1262.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1988.

Decided Jan. 17, 1989.

received a letter of reprimand for violating the regulations and subsequently filed this lawsuit claiming the regulations violate his right to freedom of speech under the First and Fourteenth Amendments to the United States Constitution. This case is before us for a second time. In *Zook v. Brown,* 748 F.2d 1161 (7th Cir.1984), this court held that Standard 4.4 is constitutional on its face, but we remanded the case for further development of the record regarding Zook's other constitutional challenges.[1]

On remand, the district court found that the application of Standard 4.4 to plaintiff-appellant Zook was in violation of his constitutional rights. The district court also found that Standard 2.19 is constitutional both on its face and as applied. On appeal, Zook challenges the district court's holdings with respect to Standard 2.19 and further claims that the district court erred in denying his claims for complete injunctive relief, a jury trial on damages and recovery of all his attorney's fees. Champaign County cross appeals the district court's determinations that it is liable in damages to Zook and that Zook was the prevailing party for purposes of 42 U.S.C. § 1988. We affirm.

Edward H. Rawles, Reno, O'Bryne & Kepley, P.C., Champaign, Ill., for plaintiff-appellant, cross-appellee.

Steven M. Helm, Dukes, Martin, Helm & Ryan Ltd., Danville, Ill., for defendants-appellees, cross-appellants.

Before COFFEY, FLAUM and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Stephen Zook, a deputy sheriff in Champaign County, Illinois, brought this action under 42 U.S.C. § 1983 challenging the constitutionality of Standards 2.19 and 4.4 of the Champaign County Sheriff's Department Operating Procedures Manual. Zook

I.

In October 1981, Arrow Ambulance Service ("Arrow") was the subject of a public debate in Champaign County concerning its provision of emergency health services. The debate focused primarily on Arrow's rates. (Tr. 352). At that time, several ambulance companies were operating in the Champaign County area. However, Arrow was the dominant ambulance service and was the company most likely to be called to a rescue scene. (Tr. 351, 157).

In November of 1981, while off-duty, deputy Zook wrote a letter to the editor of the Champaign–Urbana News–Gazette. On November 9, 1981 the letter was published by the News–Gazette in the "Peo-

---

1. We also upheld the district court's determination that two of the named defendants, Sheriff Joseph Brown and Chief Deputy William Mosher, were entitled to qualified immunity from liability for damages. The damage liability question of the remaining defendant, Champaign County, was not before us.

ple's Forum: Letters to the Editor" section. The letter read as follows:

"To the editor:

In response to the recent criticism of Arrow Ambulance Service I wish to voice an opinion which I have had for many years. I have been a Champaign County Sheriff's Deputy for the past ten years during which time I have had the opportunity to observe Ed Piraino (owner of Arrow Ambulance Service) and many of his attendants at work in many of the most adverse conditions that you can imagine. I have always been impressed with the professionalism of the owner and operators of the ambulance service.

I believe Arrow's ambulances and equipment are second to none, I feel fortunate to have an ambulance service available which can be depended upon to respond and to have the most modern of equipment and highly trained staff. I have on more than one occasion observed an ambulance crew work with a critical patient as if their lives depended on their actions rather than the patients [sic].

For all the reasons that I have stated I commend Ed Piraino and his employees for their professional and extremely dedicated service to the community.

Stephen Zook
Fisher"

Sheriff Brown had not approved the publication of the letter and was irritated over its contents. Sheriff Brown viewed it as an endorsement of Arrow and also thought it interfered with efforts he had undertaken to obtain legislation limiting Arrow's rates. After conferring with Chief Deputy Mosher, Sheriff Brown issued an "Official Letter of Reprimand" to Zook. The letter, dated November 16, 1981, stated as follows:

*"OFFICIAL LETTER OF REPRIMAND*

I have read your letter to 'People's Forum: Letters to the Editor' on behalf of Arrow Ambulance Service which appeared in the Monday, November 9, 1981, edition of the Champaign–Urbana News Gazette and Departmental reports relating to that incident.

The letter in question placed the Champaign County Sheriff Department in an uncomfortable position. We must at all times remain neutral and impartial in matters of this nature and particularly when it concerns ambulance and towing services. They are, as a rule, highly competitive and work closely with police service. The relationship between police, ambulance and wrecker service is suspect in the minds of many people; and justifiably so. Your letter can only serve to confirm the suspicion in the minds of those who choose to believe that colusion [sic] exists. We have gone to great lengths to foster the image of honesty and integrity as a policing agency. Letters such as yours tend to detract from that image and does an injustice to fellow officers.

You are considered to have been in conflict with the Champaign County Sheriff's Department Operating Procedures Manual as follows:

Standard 2.19–Abuse of Position

B. Use of Name, Photograph or Title: Officers shall not authorize the use of their names, photographs, or official titles which identify them as officers, in connection with testimonials or advertisements of any commodity or commercial enterprise, without the written approval of the Sheriff.

Standard 4.4–Public Statements and Appearances

B. When acting as representatives of the Department, officers shall receive approval from the Sheriff before they address public gatherings, appear on radio or television, prepare any articles for publication, act as correspondents to a newspaper or periodical release, or divulge investigative information or any other matters of the Department. Officers may lecture on police or other related subjects only with prior approval of the Sheriff.

Joseph T. Brown
Sheriff"

Zook requested the Sheriff to retract the reprimand, but he refused to do so. Zook then filed a complaint in the district court

seeking compensatory damages from Sheriff Brown, Chief Deputy Mosher and Champaign County, a declaration that Standards 2.19 and 4.4 are unconstitutional infringements of free speech (both on their face and as applied to him), an injunction against their further enforcement, and the removal of the reprimand from his employment file. As previously noted, the district court's original rulings on these issues were appealed on the first round of the case and we remanded for further development of the record. We now address a number of challenges to the district court's subsequent findings on remand.

## II.

Initially, we turn to Zook's claim that Standard 2.19 is unconstitutional on its face. Facial challenges to statutes or regulations typically allege that the law is vague or overbroad. *See, e.g., Village of Hoffman Estates v. Flipside, Hoffman Est., Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Zook's challenge to Standard 2.19 has a somewhat different emphasis. His sole complaint is that the regulation creates an unconstitutional prior restraint on speech because the expressions it regulates require the written approval of the Sheriff.[2]

Any prior restraint on expression carries a heavy presumption against its constitutional validity, *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1 (1971). But that is not to say that every prior restraint is invalid. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975). To our dismay, the parties have failed to cite any case challenging the constitutionality of a statute or regulation creating a prior restraint on the free speech of a public employee. Our research has proven more productive, as we have discovered two such cases.

In *Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980), the Supreme Court rejected a facial challenge to Air Force regulations requiring members of that service to obtain approval from their commanders before circulating petitions on Air Force bases. In the same year, in *Snepp v. United States,* 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704, *reh'g denied,* 445 U.S. 972, 100 S.Ct. 1668, 64 L.Ed.2d 250 (1980), the Court upheld the enforcement of an agreement signed by an agent of the CIA whereby he promised not to publish any information relating to the agency, during or after his term of employment, "without specific prior approval by the Agency." The Court's approach in both cases was to scrutinize the extent to which the absence of prepublication review impaired the government's ability to perform its statutory duties. *Glines,* 444 U.S. at 354, 100 S.Ct. at 599; *Snepp,* 444 U.S. at 511–513, 100 S.Ct. at 766–67. In addition, the Court in *Glines* considered whether the Air Force regulations restricted speech in a manner more than reasonably necessary to protect the government's interests. *Glines* 444 U.S. at at 355, 100 S.Ct. at 600. It may be true that the government has unique interests in military and security matters, but *Glines* and *Snepp* are no less apposite to the facts before us. As the *Glines* Court observed, "Even when not confronted with the special requirements of the military, we have held that a government employer may subject its employees to such special restrictions on free expression as are reasonably necessary to promote effective government." *Glines,* 444 U.S. at 356 n. 13, 100 S.Ct. at 600 n. 13 (citing cases); *See also Snepp,* 444 U.S. at 509 n. 3, 100 S.Ct. at 765 n. 3.

■ Our assessment of Standard 2.19 must begin with the recognition that it applies not to citizens at large but only to officers of the Champaign County Sheriff's Department. Because Zook is a Champaign County sheriff's deputy, his right to speak on public issues is not commensurate

---

**2.** When asked by Judge Mihm whether Zook would have any facial challenge to Standard 2.19 if it did not contain the phrase "without the written approval of the sheriff," Zook's counsel replied that Zook would have "no quarrel with it" in that case because it would then be "prohibitory in all instances." (Tr. 109)

with the speech rights enjoyed by citizens at large.

"[I]t cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

*Pickering v. Board of Education of Township High School District 205,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

This case is therefore readily distinguishable from a line of Supreme Court cases cited by Zook assessing the constitutionality of prior restraints not directed at public employees, in law enforcement or in any other public service capacity. *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 552, 95 S.Ct. 1239, 1243, 43 L.Ed. 2d 448 (1975) (citing cases). *See also Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) (prepublication censorship of motion pictures found to be "sacrilegious" declared unconstitutional); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963) (prepublication censorship of publications found to be "objectionable" declared unconstitutional).

Moreover, it is undisputed in this case that the Sheriff's Department has a valid concern with maintaining impartiality both in appearance and in fact with respect to emergency care providers. As we have noted, Zook attacks the prepublication enforcement, not the purpose, of Standard 2.19. Yet without prepublication review, the Sheriff would be powerless to prevent damage to the Department's reputation. The dark and seamy shadow of possible conflicts of interest or kickback arrangements creep into view with the publication of a deputy sheriff's comments suggesting Department support for one commercial enterprise over another of its competitors. The Sheriff's authority to preclude publication of speech falling within Standard 2.19 is the surest (and, as we explain below) the most reasonable means of maintaining public confidence in the Sheriff's Department. Granted, Zook sent his letter in good faith and was not guilty of any collusive conduct, but the concern here is with the appearance of impartiality and fairness. Government employees not only must avoid any undue influence in fact, but must appear to the public to be avoiding it. *United States Civil Service Commission v. National Association of Letter Carriers, AFL–CIO,* 413 U.S. 548, 565, 93 S.Ct. 2880, 2890, 37 L.Ed.2d 796 (1973) (upholding the Hatch Act, prohibiting government employees from taking an active part in political management or in political campaigns). In short, we hold that the Sheriff's Department's ability to maintain public respect and confidence would be impaired in the absence of prepublication review of speech fairly encompassed by Standard 2.19. This case is therefore unlike *Pickering,* upon which Zook places some reliance.

In *Pickering,* the Supreme Court ruled that a school board has no authority to prevent a public school teacher from commenting on the board's allocation of school funds because the issue was a matter of public concern. The Court also found that the board had no valid interest in the censure of the speech at issue. *Pickering,* 391 U.S. at 569–70, 88 S.Ct. at 1735–36. By contrast, in this case employer action was taken pursuant to regulation. In addition, the Champaign County Sheriff's Department has a legitimate interest in regulating the sort of speech contained in Zook's letter.

Furthermore, we are confident that Standard 2.19 does not and will not preclude officers from speaking on matters of public concern. The rule is drawn to prohibit unauthorized expressions in certain specific circumstances, i.e., where the speaker is identified as an officer, in connection with testimonials or advertisements of any commodity or commercial enterprise. Thus, so long as an officer does not identify himself

as a Champaign County deputy, he may in his own name take a public stand on any public issue without prior approval and without fear of reprimand under Standard 2.19. And, presumably, the rule will not come into play where he identifies himself as an officer while speaking on a matter of public concern in a manner not reasonably to be construed as a commercial testimonial or advertisement. The concern for maintaining an appearance of impartiality justifies this limited infringement of otherwise protected speech.

Lastly, we note that the rule is couched in terms sufficiently unambiguous to limit the Sheriff's enforcement discretion and render discriminatory enforcement unlikely. The rule is easily understood by persons of ordinary intelligence. We will not assume that the Sheriff will attach to its terms meanings inconsistent with their common interpretations. Certainly, it is a far easier task to accurately and fairly identify an "advertisement" or "commercial enterprise" than, for example, a "sacrilegious" film, (see *Joseph Burstyn, Inc. v. Wilson, supra*) or "obscene" literature (see *Bantam Books, Inc. v. Sullivan, supra*). This is not a case where the regulatory criteria are so broad as to grant the sheriff unfettered enforcement discretion. See *Poulos v. New Hampshire*, 345 U.S. 395, 405–08, 73 S.Ct. 760, 766–68, 97 L.Ed. 1105 (1953).[3]

■ Zook further argues that Standard 2.19 cannot stand because Sheriff Brown's enforcement decisions are not subject to review. Some Supreme Court cases suggest that an administrative review procedure is often essential if a prior restraint is to be sustained. See *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559,

95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975). It is noteworthy that procedural safeguards were not a concern in *Brown v. Glines* or *Snepp v. United States*, the only two cases we have found involving prior restraint of government employees. *See also* M.B. Nimmer, *Nimmer On Freedom Of Speech* section 4.06[B] p. 4–30–31 (1984). In light of *Snepp* and *Glines*, the narrow range of speech regulated by Standard 2.19, the County's legitimate interest in its enforcement and the existence of procedural safeguards as disciplinary penalties escalate (*see infra* p. 895), the absence of a review procedure in this case does not render the regulation unconstitutional on its face.

### III.

■ Zook also challenges the constitutionality of Standard 2.19 as applied to him. The district court found, and we agree, that Zook's letter to the editor did constitute a "testimonial" in favor of Arrow Ambulance Service, and the letter clearly identifies Zook as a Champaign County deputy. There is, consequently, no question that the letter is encompassed by Standard 2.19. Nonetheless, Zook claims that the rule was applied to him in violation of his constitutional rights under *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Specifically, he contends that the rule cannot be applied to him because it is undisputed that he spoke in good faith on a matter of public concern in a manner that did not impair his ability to perform his duties.

In *Connick*, an assistant district attorney (Myers) was discharged after distributing a questionnaire to other assistant district attorneys in her office concerning of-

---

**3.** At trial, Zook presented a fund raising poster distributed by the Police Benevolent & Protective Association Unit 116, a lodge to which Sheriff Brown belonged. The poster contains approximately forty-five advertisements for Champaign County businesses, including an ad for Arrow Ambulance Service, various wrecking companies, service stations, banks, restaurants and motels. The words "SUPPORT LAW ENFORCEMENT" appear in large letters above the ads, which are bracketed by columns of public service messages labeled "Help Fight Crime,"

"Know Traffic Signs" and "Bicycle Safety Rules." Sheriff Brown's name and picture also appear, as does the name Sgt. Dave Bunetta. Though Sheriff Brown did not approve the use of his name or that of Bunetta, no disciplinary action was taken. We are not persuaded that the poster constitutes selective enforcement of Standard 2.19. As Sheriff Brown testified, the poster is in the nature of "[business] support of law enforcement, not law enforcement supporting these particular businesses." (Tr. 155).

fice supervisors, policies and morale. The Court's threshold inquiry was whether Myer's questionnaire could fairly be characterized as speech on a matter of public concern. *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689. Finding that at least a portion of the questionnaire could be so characterized, the Court proceeded to determine whether Myers' termination was justified by her employer's interest in the effective fulfillment of its public responsibilities. *Id.* at 149–50, 103 S.Ct. at 1691–92. In the course of this latter analysis, the Court identified four relevant considerations: (1) whether distribution of the questionnaire impeded Myers' ability to perform her duties, (2) the degree to which the questionnaire involved matters of public concern and the gravity of that concern, (3) the time, place, and manner of the distribution, and (4) Myers' motive in distributing it.[4]

Judge Mihm found that Zook's letter praising Arrow Ambulance Service involved a matter of public concern, as Arrów was the subject of the Champaign County media debate relating to emergency health service. (Tr. 352). The record reflects that the court went on carefully to consider each of the *Connick* factors.

 The court concluded that Zook's letter did not impair his duties "in the traditional sense," but "could fairly be characterized as saying that it could effect the public's perception of the impartiality of the department." (Tr. 351–53). Zook complains that the County failed to prove—presumably by citizen testimony—that the impartiality of the Sheriff's Department *in fact* was compromised by the letter. We think it is sufficient in this case that the County defendants established that the letter could very well have an unfavorable impact on the Department's reputation. Sheriff Brown testified that he had received calls of accusation concerning improper relationships with wrecker services, another commercial enterprise with which the Sheriff's Department frequently deals. (Tr. 158). In addition, Judge Mihm found

that there was competition in Champaign County among ambulance services. That finding tends to reinforce the County's claim that the letter could undermine the Sheriff Department's appearance of impartiality. *Zook*, 748 F.2d at 1167. Under these circumstances, the district court could reasonably infer that Zook's letter could very well affect the public's perception of the impartiality of the Department. *See Hall v. Ford*, 856 F.2d 255, 261 (D.C. Cir.1988).

Zook also emphasizes the district court's finding that Zook's actions "were totally motivated by good faith." (Tr. 357). In *Connick*, Myers circulated her questionnaire concerning transfer policy immediately after receiving notice that she was being transferred. Because the questionnaire arose from an employment dispute, the Court gave "additional weight" to the view that Myers threatened her employer's authority to run the office. 461 U.S. at 163, 103 S.Ct. at 1698. In this case, Zook did not intend to affect the public's perception of the Sheriff's Department, but that does not aid his case in any significant way because a public perception of partiality may be created notwithstanding the absence of partiality in fact, or the good faith of the speaker.

Lastly, some significance is attached to the finding that the letter was written while Zook was off duty. But that is of no consequence in light of the language of Standard 2.19. The critical fact is that Zook identified himself as a Champaign County sheriff's deputy and his letter is otherwise encompassed by the regulation. The Supreme Court observed in *Connick* that the government's case for regulating employee speech is strengthened when the expression violates a rule or regulation. *Connick*, 461 U.S. at 153 n. 14, 103 S.Ct. at 1693 n. 14. For these reasons, we hold that the application of Standard 2.19 in this case did not violate Zook's constitutional rights.

4. It is perhaps helpful to note that Myers' actions were not in violation of any statute or regulation. While *Connick* is instructive on the

issues before us today, the Supreme Court's discussion was not in the context of determining the constitutionality of a law as applied.

## IV.

Judge Mihm upheld the constitutional validity of Standard 2.19, but agreed with Zook that Standard 4.4 was unconstitutional as applied to him. The court's ruling on Standard 4.4 is not challenged on appeal. Zook sought a jury trial to determine his entitlement to damages for the improper enforcement of Standard 4.4. The County defendants filed, and the district court granted, a motion to strike the jury trial on the ground that Zook would be unable to prove any damages arising specifically from enforcement of Standard 4.4.[5] Zook claims the court erred in denying him a jury trial. He also contends that the court erred in denying his request for an order requiring removal of the entire letter of reprimand from his employment file. Zook attacks both rulings on the ground that they are premised upon what he believes are inconsistent findings that Standard 2.19 was constitutionally applied but Standard 4.4 was not.

It is apparent from Judge Mihm's rulings from the bench that he believed that an officer could violate Standard 2.19 simply by identifying himself as such in connection with a commercial testimonial. So construed, the regulation applies to publications which may only *appear* to connect the Sheriff's Department with support of a commercial enterprise. On the other hand, the court apparently took the view that an officer cannot violate Standard 4.4 unless he *in fact* acts or purports to act as a "representative of the Department." Judge Mihm explained:

"Turning to 4.4, 4.4 I think is much more difficult. In some respects it certainly could be argued that the considerations are the same [as for Standard 2.19]. Certainly the general concerns are the same. But I believe that the court has a duty to focus in on the exact wording of

the regulation, and in doing that in reference to 4.4 ... 4.4 is something different, I believe, than what is regulated in 2.19.... [W]hen it says 'when acting as a representative of the department,' I believe that involves something different than saying, as 2.19 says, 'that if you're employed by a police department, or sheriff's department and if you give a testimonial for a person, or an organization, in commercial enterprise and you at that time indicate that you are employed by this agency, that that is bad.' That is not the same thing as saying 'acting as a representative of the department.' 4.4 I think is intended to cover a slightly different situation." (Transcript 358).

As we have said, there is no question that Zook identified himself as a sheriff's deputy in connection with a testimonial in favor of Arrow Ambulance Service. But it is also established that Zook did not receive Sheriff Brown's authorization to send the letter; that Zook did not state in the letter that he was writing as a representative of the Department; and that the letter does not otherwise state that he was speaking on behalf of the Department. We believe the district court could reasonably conclude that Standard 4.4 was applied to Zook in violation of his constitutional rights. Any perceived inconsistency in the district court's rulings with respect to Standards 2.19 and 4.4 therefore provides no ground for attacking its denial of a jury trial on damages and complete injunctive relief.

## V.

Champaign County has cross-appealed the district court's determination that it is liable in damages for the unconstitutional application of Standard 4.4 to Zook. The County's liability was premised on *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The Supreme Court held in *Pembaur* that mu-

---

**5.** In granting the motion to strike the jury trial, Judge Mihm reasoned that "even if the defendants had not relied upon Rule 4.4 in reprimanding the plaintiff, the plaintiff would still have a letter of reprimand in his file which relied upon Rule 2.19. In other words, even if the defendants had not acted in an unconstitutional manner, the plaintiff's file would still contain a valid

(in constitutional terms) letter of reprimand." (September 8, 1987 Order). Further, the court found that Zook would be unable to prove that any of the compensatory damages he sought were proximately caused by that portion of the reprimand letter which relied upon Standard 4.4.

nicipal liability under section 1983 attaches only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Pembaur,* 475 U.S. at 482–84, 106 S.Ct. at 1299–1300. Whether an official has final policy making authority is a question of state law. *Id.*

The County contends that Judge Mihm erred in finding that Sheriff Brown had final policy making authority with respect to discipline within the Sheriff's Department. The record reflects that the Champaign County Sheriff's Department Merit Commission ("the Commission") was created by the Champaign County Board pursuant to Illinois statute. The Commission was created with the authority to promulgate rules and regulations for the appointment, discharge, and discipline of sheriff's deputies. Article 2 of the Commission's Administrative Procedures, Rules and Regulations (the "Rules"), captioned "Disciplinary Measures," authorizes the Sheriff to reprimand a deputy in writing for Rules infractions without filing charges with or otherwise reporting to the Commission (Commission approval is required for suspensions exceeding thirty days and for dismissals). Further, Article 7, Section 8 of the Rules authorizes the Sheriff to promulgate an Operating Procedures Manual ("the Manual") for members of the Sheriff's Department. Article 7 goes on to state that any deputy who violates the regulations contained in the Manual is subject to discipline (Plaintiff's Exhibit 10). Sheriff Brown did promulgate a Manual, which contains Standards 2.19 and 4.4. The Manual was adopted by the Commission on November 21, 1978. (Plaintiff's Exhibit 7). The Champaign County Board approved the Commission's Rules on April 15, 1980 (Pl.Ex. 10).

■ It is clear that the Merit Commission delegated to Sheriff Brown the rulemaking and disciplinary authority at issue here. The Commission's delegation was in turn approved by the County Board. All of this leads to the conclusion that Sheriff Brown was "responsible for establishing final policy with respect to the subject matter in question." *Id.* As the Supreme Court explained in *Pembaur,* "if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions *would* represent County policy and could give rise to municipal liability." *Id.* at n. 12, 106 S.Ct. at n. 12 (emphasis in original).

## VI.

Cases brought under 42 U.S.C. § 1983 generally result in requests for attorney's fees under 42 U.S.C. § 1988. The district court found that Zook was entitled to attorney's fees as the "prevailing party" for § 1988 purposes, but reduced Zook's fee award by seventy-five percent. The County defendants cross-appeal the court's finding that Zook was a prevailing party under § 1988. In addition, Zook argues that Judge Mihm abused his discretion in reducing the fee award based upon a finding that Zook had achieved only "limited results" in the litigation.

■ We first consider whether Zook was a prevailing party. Plaintiffs may be considered a prevailing party for § 1988 purposes "if they succeed on *any significant issue* in litigation which achieves *some of the benefit* the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (emphasis added). Under this standard, we have no difficulty finding that Zook was a prevailing party. The constitutionality of Standard 4.4 as applied is a significant issue in this case and Zook achieved some of the benefit he sought in filing suit by obtaining an order that any reference to his violation of the regulation be expunged from his employment record. Of course, "this is a generous formulation that brings the plaintiff only across the statutory threshold." *Id.* It remains for the district court in the exercise of its discretion to determine the fee.

Zook was awarded $18,577.33 in attorney's fees, after 75% reduction, and full costs. Our task is to determine whether the reduction was an abuse of discretion.

Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found. *Bright v. Land O' Lakes, Inc.*, 844 F.2d 436, 442 (7th Cir. 1988).

■ There is no dispute about the district court's raw calculation of fees or the finding that all of Zook's claims were related. The issue is joined at the next step, which required the court to tailor compensable hours for related claims to reflect "the significance of the overall relief obtained." *Jackson v. Illinois Prisoner Review Bd.*, 856 F.2d 890, 894 (7th Cir.1988), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Zook sought essentially two results in this litigation: first, that Standards 2.19 and 4.4 be declared unconstitutional; and second, that the letter of reprimand be removed from his employment file. He also sought compensatory damages from all three defendants. After a bench trial and review by this court, both regulations remain in full force and effect; the letter of reprimand, though a portion has been expunged, remains in Zook's file; and two defendants are immune from damage liability while Champaign County is liable only for nominal damages. Viewing the litigation in its entirety, we believe that the district judge fairly concluded that Zook achieved only "limited results." As we have said, he did prevail on one significant issue—the constitutionality of Standard 4.4 as applied—but the fee award reflects that success. We cannot say that Judge Mihm abused his discretion in denying the remainder of the fees.

AFFIRMED.