946 F.2d 897
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Craig A. MITRAN, Plaintiff/Appellant,
v.
COUNTY OF DUPAGE, Defendant/Appellee.
 No. 91-1067.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 2, 1991.*
Decided Oct. 16, 1991.
Rehearing Denied Nov. 14, 1991.
 
 Before POSNER, COFFEY and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Craig Mitran was held in the Dupage County Jail as a pretrial detainee from March of 1988 to April of 1989. After his release he brought this suit under 42 U.S.C. § 1983, alleging that his due process and Eighth Amendment rights were violated at the Dupage Jail. He claims that he was denied necessary medical treatment, had inadequate opportunity to exercise, had no access to fresh air or sunshine, was locked in his cell for all but two hours each day, and was denied contact visits, and that this mistreatment violated his constitutional rights. The district court granted summary judgment to the defendant County of Dupage and Mitran appealed. Because we find that Mitran has not shown any policy or custom of the County that may have violated his rights, and that even if such a policy existed, no actual constitutional deprivation occurred, we AFFIRM.
 
 I. FACTS
 
 2
 Policemen from the Village of Downers Grove,[1] Illinois arrested Craig Mitran on a Failure to Appear Warrant on March 13, 1988, and the next day he was taken to the Dupage County Jail and held as a pretrial detainee. At the jail Mitran told officials that he had difficulty walking because of a leg injury, and so Dr. John Oberhelman placed him in administrative segregation, apart from the general prison population. (R.Doc. 61B). Doctor Oberhelman worked for Szabo Prison Health Services, a company hired by the County to provide medical care at the Dupage Jail.
 
 
 3
 A few days after he entered administrative segregation, Mitran saw Dr. Oberhelman and stated that he had a dislocated knee and was treating it by wearing a leg wrap. Mitran complained of having to wait ninety days for a new supply to come in so he could replace the old wrap he was wearing. Because of this injury, Doctor Oberhelman issued Mitran a red wrist band, signifying that Mitran would not be allowed to use the gymnasium. Mitran wore this wristband for the entire period of his detention. Mitran admits that during his detention he was able to see a physician whenever he requested to do so, and that he received a great deal of medical attention at the jail, where his leg condition actually improved. (R.Doc. 56 and 61B). In fact, one of Mitran's complaints is that the medical staff failed to re-examine him after his leg improved, denying him the opportunity to use the gym.
 
 
 4
 Prisoners in administrative segregation at the Dupage Jail are allowed to use a "common area" by themselves for one half hour in the morning and one half hour in the evening. This common area is approximately forty feet by twelve feet, while the cells are roughly six feet by twelve feet. Prisoners could not exercise outside, as the Dupage Jail does not have an area for outdoor recreation. As a result, Mitran did not have a chance to breathe fresh air or see the sun in the sky while detained. He could see visitors once a week, but only from behind a glass partition that required him to communicate by telephone.
 
 II. ANALYSIS
 
 5
 We review a district court's grant of summary judgment de novo. See, e.g., Doe v. Allied-Signal, Inc., 925 F.2d 1007, 1008 (7th Cir.1991). Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). While we will view the record and all inferences from it in the light most favorable to the nonmoving party, ( Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990)), we note that the nonmoving party may not rest on its pleadings, but must use specific evidence to demonstrate the existence of a genuine issue of triable fact. Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991).
 
 
 6
 In this case Mitran is suing Dupage County, claiming that the County has violated his constitutional rights under 42 U.S.C. § 1983 and seeking, inter alia, monetary relief. For a municipality to be held liable under § 1983, a plaintiff must prove a direct causal link between an official policy or custom of the municipality and an actual constitutional deprivation. Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 1203 (1989); Thompson v. Duke, 882 F.2d 1180, 1187 (7th Cir.1989). Official policies or customs arise from a variety of sources, such as the decisions of a municipal legislative body, ( Pembaur v. Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298 (1986)), or actions of a municipal agency or board with final authority in an area. Monell v. Department of Social Services, 436 U.S. 658, 661, (1978). Alternatively, the actions of anyone with final authority over some decision for the municipality can constitute official policy under section 1983. Pembaur, 475 U.S. at 483-84 ("municipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). Who qualifies as such a "final policymaker" is a question for the trial court to answer, using state and local laws and "custom or usage having the force of law." Jett v. Dallas Independent School District, 491 U.S. 701, 109 S.Ct. 2702, 2723 (1989).
 
 
 7
 If a plaintiff can prove a municipal policy exists, she must then also show that the policy itself caused a constitutional violation. Canton, 489 U.S. at ----, 109 S.Ct. at 1203; Monell, 436 U.S. at 694. As the Court put it in Oklahoma City v. Tuttle, 471 U.S. 808, 824-25 n. 8, 105 S.Ct. 2427, 2441 (1985), there must be an "affirmative link" between the policy and the harm. Even given such a connection, however, the plaintiff must actually have suffered a deprivation of a constitutional right to meet the requirements of section 1983.[2]
 
 
 8
 In the instant case the district court found that no municipal policy existed upon which to ground a claim, and that even if such a policy did exist, no actionable harm had occurred.
 
 A. Mitran's Leg Injury
 
 9
 On appeal Mitran renews his argument that the Village of Downers Grove and officers Hutchens and Maly are liable under section 1983 for injuring Mitran's leg during a 1987 arrest. Mitran argues that because Hutchens and Maly were "in contract" with the Village of Downers Grove they are somehow connected to the County, making the both the Village and County vicariously liable for the officers' actions. The doctrine of respondeat superior, however, does not apply in section 1983 actions. Canton, --- U.S. ----, 109 S.Ct. at 1203. Furthermore, Mitran fails to present any evidence linking this injury to any policy, ordinance, regulation, decision, or custom of either Downers Grove or the County, making summary judgment on this issue proper.
 
 B. Pretrial Detention
 
 10
 Mitran also claims that Dupage County has violated his Eighth Amendment rights by denying him necessary medical care, and his Fourteenth Amendment right of due process by placing him in administrative segregation and restricting his exercise, visits, and access to the outdoors, all pursuant to its official policies or customs. The defendant counters that under Illinois law the sheriff's department alone controls the policies and practices in jails. See Ill.Rev.Stat. ch. 34, par. 3-6017 and ch. 75, par. 102 (1989) (sheriff shall have custody and care of the jail and all prisoners in the jail). Furthermore, the defendant argues, Dr. Oberhelman made the decision to put Mitran in administrative segregation, and this was the decision of an independent contractor and therefore not attributable to the County. The County casts Doctor Oberhelman as an independent contractor because he works for the private health care company hired by the County to provide health care at the jail, and contends that his independent, discretionary decisions cannot establish County policy for section 1983 purposes.
 
 1. Medical Care
 
 11
 To succeed on a § 1983 claim for inadequate medical care, Mitran would need to prove a link between the mistreatment and some County policy, ordinance, or custom. See Monell, 436 U.S. at 694. He attempted to do this by arguing that the contract between the County board and Szabo Prison Health Services vested Dr. Oberhelman, who was hired by Szabo, with final policymaking authority as to the medical treatment and conditions in administrative segregation. (See District Court Memorandum Opinion and Order, pp. 7-8). Though municipal liability will attach for decisions by a final policymaker under Pembaur, 475 U.S. 469, merely delegating authority to a subordinate to make discretionary decisions does not give the subordinate power to create county policy. St. Louis v. Praprotnik, 485 U.S. 112, ---, 108 S.Ct. 915, 926 (1988). For such decisions to bind the County, it would have had to approve the decision and the basis for it, not simply go along with it. Id. at 926-27. This is not to say that final policymaking authority can never be delegated, for Praprotnik recognized that, "[a]uthority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority ..." Id. at 924 (quoting Pembaur, 475 U.S. at 483). Thus, the question in this case is whether such a delegation has occurred, because if it has the decisions of Dr. Oberhelman could bind the County.
 
 
 12
 In a similar case the eleventh circuit found that a county had delegated final policymaking authority for medical affairs to the physician's assistant at a prison. Mandel v. Doe, 888 F.2d 783 (11th Cir.1989). In Mandel the county entered into a "Memorandum of Understanding" with its health department to provide medical care to inmates at the county prison. Id. at 785. Although the plan called for the assistant to be supervised by a doctor, a custom and practice developed that the assistant was subject to no supervision or review. Id. at 794. Because the assistant's decisions as to inmate medical care were effectively final, the court found that the assistant's decisions could be the basis for county liability, as the county itself had given him this power. Id.
 
 
 13
 This court dealt with the delegation of policymaking authority in Zook v. Brown, 865 F.2d 887 (7th Cir.1989), where we found that a county had delegated final policymaking authority to a Sheriff. Zook involved the application of standard operating procedures for members of the Sheriff's Department. The county board created a "Sheriff's Department Merit Commission" pursuant to an Illinois statute, with authority to make rules and regulations regarding sheriff's deputies. The Commission then authorized the sheriff to create an "Operating Procedures Manual," of regulations binding deputies. A deputy disciplined pursuant to rules in this manual sued the county. We found that the Commission's delegation of power, as authorized by the county, made the Sheriff a final policymaker for purposes of section 1983 municipal liability. Id. at 895.
 
 
 14
 The key to finding delegation of authority in Mandel and Zook was the absence of any review of the delegatee's decisions. When review is missing, the decisions of the delegatee become official policy and may bind the delegating municipality. In deciding whether Dr. Oberhelman qualifies as a final policymaker under a delegation theory we look to state law and custom or practice having the force of law. Jett, 489 U.S. at ----, 109 S.Ct. at 2723. Although one could argue that either the Sheriff, as warden of the jail, or the County, as the holder of the purse strings, is responsible for final policy at the jail, no facts indicate that either party has delegated final policymaking authority to Dr. Oberhelman. First, the contract between the County and Szabo Prison Health Services ("Szabo") indicates that the County policy was to honor prisoners' constitutional rights. Paragraph 20, titled "COMPLIANCE WITH CIVIL RIGHTS LAWS," states: "SZABO agrees that it will at all times insure that its activities hereunder comply with federal and state laws and judicial mandates guaranteeing prisoners rights to adequate medical care as protected by Illinois and the United States Constitution." (R.Doc. 61B). More, the County ensured compliance with the law by other contract clauses. Paragraph 2.1 stated: "SZABO staff shall work closely with the Dupage County Jail Administration and such other County departments and personnel under the supervision and direction of the Dupage County Sheriff." Paragraph 9.2 required: "SZABO shall develop written ... policies and procedures to define practice levels, responsibilities, continuity of care and the enforcement of standards established by the SHERIFF." Paragraph 9.3 required Szabo to provide monthly health care reports to the jail administration.
 
 
 15
 One contract clause might be read as delegating policymaking power to Dr. Oberhelman. Paragraph 2.1(C) stated: "John Oberhelman, M.D. ... shall be delegated responsibility for making final medical judgments, including the level of health care required ... and assuring the quality and accessibility of medical services provided to residents." In light of the other clauses, however, this looks more like a delegation of power to make discretionary medical decisions, not broad policy choices of the type required for Monell liability. As the contract creates review of the doctor's decisions and there is no evidence of a custom or practice allowing the doctor to create County policy, Mitran has failed to link his alleged lack of medical treatment to an official policy as required by § 1983.
 
 2. Exercise, Environment, and Visitation
 
 16
 A similar analysis applies to Mitran's due process claims regarding the restriction on exercise, visits, and outdoor exposure that he faced in administrative segregation. Mitran has not established that Dr. Oberhelman or Szabo acted as a final policymaker at the jail, and even if the County did set policies as to exercise, environment, and visitation in the jail, these policies have not deprived Mitran of his rights.
 
 C. Punishment of Pretrial Detainees
 
 17
 Even if the County was responsible for policy as to the treatment of prisoners, Mitran would still need to show an actual constitutional deprivation. Canton, 489 U.S. at ----, 109 S.Ct. at 1203. Because they have yet to be found guilty of any crime, pretrial detainees such as Mitran have a constitutional right under the due process clause of the Fourteenth Amendment to be free from all "punishment." Bell v. Wolfish, 441 U.S. 520 (1979). Summary judgment in this case is proper, however, as Mitran has not presented evidence that he has been "punished."
 
 1. Medical Care
 
 18
 Mitran claims that he was denied proper medical treatment at the jail because he did not receive therapy for his injured leg and he had to wait ninety days to get an Ace leg wrap, which he needed to treat his leg. To succeed on an Eighth Amendment claim for the denial of medical treatment, Mitran would need to show that prison officials had committed "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This court has held "deliberate indifference" to mean intentional or criminal recklessness. McGill v. Duckworth, Nos. 90-1845 and 90-1945 (7th Cir. Sept. 17, 1991); Salazar v. Chicago, No. 89-3551 (7th Cir. Aug. 7, 1991) (specifically applying this standard to a pretrial detainee's claim of inadequate medical care); Archie v. Racine, 847 F.2d 1211 (7th Cir.1988) (in banc); Duckworth v. Franzen, 780 F.2d 645 (7th Cir.1985). This is a subjective test, and Mitran could prevail only by showing that the County intended him to suffer grievously or knew the risk of such suffering but was indifferent to it. Salazar, No. 89-3551, slip op. at 10.
 
 
 19
 The facts in this case do not show that Mitran endured great suffering or that anyone was indifferent to his needs. Waiting ninety days for a leg wrap may be inconvenient,[3] but it does not reveal deliberate indifference to a serious medical need. In fact, Mitran's leg improved during his detention, even without therapy, showing that his condition could not have been all that critical.
 
 2. Exercise, Environment, and Visitation
 
 20
 To prevail on his claim that the restrictions on his use of the gym, contact visits, and outdoor exposure violated his due process rights, Mitran would need to show that these conditions, alone or in combination, amounted to punishment under Bell. Bell's guideline for deciding what amounts to punishment is, "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " 441 U.S. at 539. In the instant case the conditions Mitran complains of are all justified by legitimate governmental objectives.
 
 
 21
 Mitran was placed in administrative segregation and barred from the gym because of his medical condition. Administrative segregation was considered to be a more secure place for injured prisoners or detainees, and the governmental interest in protecting these prisoners is evident, given the possibility of suit under section 1983 if prison officials fail to protect the health and welfare of inmates. Cf. Turner v. Safley, 482 U.S. 78, 92 (1987) (upholding restrictions on activities "that threaten the core functions of prison administration, maintaining safety and internal security."). Moreover, even though exercise restrictions could amount to a constitutional violation, ( French v. Owens, 777 F.2d 1250 (7th Cir.1985)), such restrictions have generally been upheld, so long as there is at least some opportunity for exercise or other diversions. See Shelby County Jail Inmates v. Westlake, 798 F.2d 1085 (7th Cir.1986).
 
 
 22
 Similarly, the lack of contact visits was reasonably related to prison security, given the dangers inherent in such visits, primarily the transfer of contraband or weapons. Finally, the lack of outdoor exercise or the opportunity to see the sun or breathe fresh air is excused, as the Dupage Jail does not have an area for outdoor recreation, and in any event it is not constitutionally required. See id.
 
 III. CONCLUSION
 
 23
 Because Mitran has not raised any genuine issue as to the existence of an unconstitutional custom or policy practiced by Dupage County, or of any constitutional deprivation, the decision of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Mitran originally named the Village of Downers Grove and arresting officers Hutchens and Maly as defendants, but the district court granted the Village's motion to dismiss, and Mitran did not include the officers in his first amended complaint. (District Court Memorandum Opinion and Order, R.Doc. 63 n. 1)
 
 
 [2]
 Section 1983 creates liability for any person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...."
 
 
 [3]
 It is unclear whether Mitran went ninety days with no leg wrap or just had to use an old one during that period. This distinction may be unimportant, however, as Mitran was waiting for a new supply to arrive at the prison--he was not denied aid when leg wraps were readily available