William R. GLASS, Plaintiff–Appellee,

v.

Alfred H. DACHEL and County of Chippewa, Defendants–Appellants.

No. 92–3133.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1993.

Decided Aug. 11, 1993.

Lester A. Pines (argued), Richard Thal, Cheryl Rosen Weston, Cullen, Weston, Pines & Bach, Madison, WI, for plaintiff-appellee.

Eric J. Wahl, Wiley, Wahl, Colbert, Norseng, Cray & Harrell, Eau Claire, WI (argued), for defendants-appellants.

Before POSNER and MANION, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

MANION, Circuit Judge.

A county sheriff reprimanded a deputy for complaining to a fellow officer about the possible theft of a lawn mower from the county's property room. The district court granted the plaintiff deputy summary judgment. The issues on appeal are whether the sheriff deprived the deputy of his First Amendment rights, 42 U.S.C. § 1983, and whether the sheriff enjoys qualified immunity from any damages. We conclude that the deputy's speech did concern a public matter, but we reverse the district court because a material issue of fact is in dispute as to whether the sheriff's reasons for reprimanding the deputy involved promoting the efficient and effective operation of the sheriff's department.

## I. Facts

William Glass began working for the Chippewa County Sheriff's Department in 1977. In 1990, he ran for sheriff against Alfred Dachel. Glass lost the election but continued as a deputy. On May 8, 1991, Robert Wanish, another deputy sheriff who worked as a jailer, informed Glass that Wanish would be meeting soon with the Wisconsin Department of Justice, Division of Criminal Investigations (DCI). DCI was investigating whether a deputy sheriff in Chippewa County had sold small quantities of marijuana prior to his employment. Later that day, while off-duty and at home, Glass telephoned Wanish (also off-duty and at home) regarding a possible thief in the department. He accused his supervisor, Captain Curtis Folska, of taking a lawn mower from the county's "found room" that houses lost or abandoned property. During their conversation, Glass also discussed possible tampering with a file concerning a ten-year old murder investigation and the county's switching his assigned squad car once he had purchased it. Unbeknownst to Glass, Wanish tape recorded much of the conversation. Pursuant to this conversation Wanish reported the lawn mower incident to DCI.

Wanish was not Glass' supervisor or otherwise in his "chain of command." Other than his anticipated meeting with DCI, Wanish had no official authority as an internal investigator or some similar designation. In addition to talking with Wanish, Glass contacted the Chippewa County district attorney about Folska and the lawn mower. Apparently through his past experiences in the department, Glass believed that Dachel would not adequately investigate his allegations. At some point the lawn mower incident hit the local newspapers (from an anonymous source). Although no criminal charges ever materialized, the district attorney ultimately found that Folska had violated a county ordinance and recommended a citation and fine be imposed.

A couple of months later, on July 3, 1991, Glass met with members of DCI and the Chippewa County Law Enforcement Committee (Enforcement Committee). By that time, Glass was of the opinion that Folska had not taken the lawn mower for personal use but possibly had fixed it for use on the police firing range. The investigation, however, was not over. Dachel had become aware of Glass' tape-recorded conversation with Wanish, and on July 8 the tape was played during another meeting of the Enforcement Committee. Before hearing the tape, Dachel was not aware that Glass was critical of any investigation. This case arose because on August 7, 1991, after discussions with the Enforcement Committee, Dachel issued Glass a private letter of reprimand. In pertinent part, the reprimand letter states:

Upon information and belief, the undersigned believes that you took no steps to communicate your concerns and suspicions to either a person in the supervisory chain of command within this Department or to a responsible law enforcement authority outside of this Department, for purposes of pursuing an investigation. Instead, you chose to proceed outside of channels to express your personal viewpoints and allegations, to the detriment of the Department.

\* \* \* \* \* \*

Your action in telephoning Deputy Wanish and informing him of your belief that Officer Folska had engaged in a crime and that said crime would be covered up by the undersigned constituted inappropriate conduct on your part, unbecoming an officer. Your failure to have proceeded to express your concerns and to share your evidence (if any) with supervisors in the chain of command and your act in communicating your suspicions to a fellow officer constitute grounds for disciplining you in this fashion.

\* \* \* \* \* \*

I need to be able to place my trust in deputies to fulfill the responsibilities of my office. It is imperative that a sheriff's department promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence in the law enforcement institution. This department, subject to the leadership of the undersigned, has a substantial interest in developing discipline, esprit de corps and uniformity so as to insure the safety of persons and property.

\* \* \* \* \* \*

As you are aware, a procedure has been instituted under the direction of the undersigned for the performance of internal investigations through outside means, where necessary. In the future, should you have suspicions that Departmental employees or officers are engaging in illegal activities, you are urged to avail yourself of said policy and procedures.

The sheriff's department follows a system of progressive discipline; thus, it is feasible that the written reprimand could thereafter lead to suspension or discharge. The department did not have a written rule or regulation outlining a procedure for reporting internal misconduct until April, 1992, well after the issuance of the reprimand letter.

## II. District Court Proceedings

On February 26, 1992, Glass sued Dachel and the County of Chippewa for declaratory and injunctive relief, compensatory and punitive damages, and attorneys' fees. The defendants moved to dismiss the complaint because the reprimand letter was not so significant as to amount to a constitutional violation. They also moved for summary judgment claiming that Glass' speech did not involve matters of public concern, that the interests of the sheriff's department outweighed Glass' First Amendment rights, and that the defendants enjoyed qualified immunity. On May 29, 1992 the district court denied the motions, finding that the reprimand letter infringed Glass' right to speak on a matter of public concern. The court also refused qualified immunity, finding the law sufficiently clear that any reasonable officer would have known that the reprimand violated the constitution.[1]

On June 29, the defendants filed a motion in the district court to extend time in which to appeal. On July 1, the district court denied the extension, finding among other things that no judgment had been entered and seeing no reason to certify the case under Rule 54(b). In fact, the district court even described the motion as an attempt to delay the case. That same day Glass moved for summary judgment, to which the defendants did not respond, and which the court granted for essentially the same reasons given earlier to deny the defendants' relief. The parties then stipulated to damages which

1. The defendants in their motions to dismiss and for summary judgment had argued that Glass' freedom of speech did not outweigh the defendants' interests pursuant to *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The court cited *Pickering* in its decision to deny the defendants' motion, but did not expressly make any finding or conclusion on the issue.

the court ordered, thus finalizing the judgment for appeal.

## III.

### A. *Notice of Appeal.*

■ In their notice of appeal, the defendants specifically appealed from the court's "granting summary judgment in favor of the plaintiff." In their opening brief to this court, however, the defendants attached only the district court's opinion denying their own motion for summary judgment and focused their arguments entirely on that ruling. Although the defendants included the short order granting summary judgment in favor of the plaintiff and against the defendants, they did not attach the August 3, 1992 opinion and order granting the plaintiff's motion for summary judgment. Glass moved to strike the defendants' brief because it did not include a copy of the court's entry granting summary judgment to Glass, and apparently because the brief focused on issues that he felt were not on appeal. The defendants responded by requesting this court to grant leave to consider the appeal from both of the district court's orders.

■ Initially we note that the defendants filed a proper notice of appeal pursuant to Fed.R.App.P. 3(c).[2] Glass assumes that because the district court finalized the case by granting summary judgment to the plaintiff, only that last order is before us on appeal. However, when the appellant appeals the final judgment, that judgment necessarily incorporates all earlier interlocutory decisions. *Chaka v. Lane,* 894 F.2d 923, 925 (7th Cir.1990). Because the defendants substantially complied with the rules of procedure, *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 316–17, 108 S.Ct. 2405, 2408–09, 101 L.Ed.2d 285 (1988), we will consider the appeal of both orders. In *Chaka,* the notice of appeal actually narrowed the issues by specifying an interlocutory order. Here, while the appellant's *brief* focused on an earlier order, the notice of appeal specifically and correctly appealed from the final judgment of August 25, 1992.

> [N]aming an interlocutory order as the thing appealed from increases the information available to the court and the adverse parties. Instead of having to prepare for an attack on every decision taken in the case, the appellees may concentrate on the single order to which the notice of appeal points.

*Id.* By referring to the final order the defendants present the whole case to us on appeal. Glass correctly points out that the defendants failed to properly include the district court's opinion that granted Glass summary judgment (a violation of Circuit Rule 30(b)(1)). But we accept the defendants' explanation that the four-page opinion was "inadvertently omitted," especially since the one-page final order was included.[3]

We therefore GRANT the defendants' request and consider the appeal in this case to be from both orders of the district court. Glass' motions to strike are DENIED.

---

2. Fed.R.App.P. 3(c) provides:

   The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.... An appeal shall not be dismissed for informality of form or title of the notice of appeal.

3. Additionally, as noted above, after the district court denied the defendants' motion for summary judgment, he also refused to extend the time for filing a notice of appeal. "Because the notice of appeal has been filed from an interlocutory decision ... it would be inappropriate to grant defendants' motion to extend time for the filing thereof." Yet since part of that interlocutory order included a denial of defendants' claim for qualified immunity, the defendants had a valid argument for immediate appeal of that issue. *See Mitchell v. Forsyth,* 472 U.S. 511, 528–29, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The court instead viewed the filing as an attempt to delay the trial. This may have been another way of the court's saying the qualified immunity motion was frivolous, which such a denial requires. *Apostol v. Gallion,* 870 F.2d 1335, 1339–40 (7th Cir.1989). In any event, that denial does not excuse the defendants' failure to fully present and argue the issue, but it does militate against discarding an important issue on appeal that is technically before us anyway. Because the issue was argued in the district court and was properly preserved in the notice of appeal, we will consider the merits of the denial of defendants' motion for summary judgment even though a copy of that part of the judgment was not included with the defendants' brief.

*B. Possible Waiver.*

█ In a related argument, Glass asserts that the defendants waived any *Pickering* defense (the merits of which will be discussed later) because they failed to respond to Glass' motion for summary judgment in the district court. We reject the waiver argument for four independent reasons.

First, the parties and the district court have begun nearly every pleading, brief and order in the district court and in this court with the essentially same phrase—the material facts are not in dispute. In the summary judgment context, this means that the moving party must establish its entitlement as a matter of law. Fed.R.Civ.P. 56(c). Even with the district court's denial of the defendants' motions, Glass must still convince the court that the law provides him with relief. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (where appellant failed to respond to summary judgment motion, the court would err in granting summary judgment "where it is apparent from the record that there are contested issues of material fact.").

█ Glass makes much of the defendants' failure to respond to their motion for summary judgment. The federal rules contemplate just such a situation. Fed.R.Civ.P. 56(e) (("If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party") (emphasis added)). "If appropriate" means "as a matter of the governing law.". *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc). *See Thornton v. Evans*, 692 F.2d 1064, 1074 (7th Cir.1982). Thus, by not responding to Glass' motion for summary judgment, the defendants were only admitting that no material issue of fact existed. The defendants did not waive all legal arguments based on those undisputed facts. If the court concludes that the same undisputed facts entitle either party to relief, it can so state. That appears to be what happened. Where facts are not disputed, if a district court grants one party's motion for summary judgment and denies the other party's cross-motion, this court can reverse and award summary judgment to the losing party below.

*In re Energy Cooperative, Inc.*, 832 F.2d 997, 1005 (7th Cir.1987). Or a party may preserve matters not properly pleaded by fully presenting and arguing the issue before the trial court. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir. 1987).

Second, when the district court denied the defendants' motion for summary judgment, for all intents and purposes the case was over. The facts were not in dispute. And the district court identified no missing fact or disputed inference. Based on the court's understanding of the law, once it denied the defendants' motions, it was a certainty that the plaintiff had won.

Third, and most importantly, the district court did not believe that the defendants had waived any arguments. When ruling on Glass' motion, the court adopted its previous findings of fact from the earlier ruling and considered all of the defendants' evidence in the record. *See* Rule 56(c) (court must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits"). In granting Glass' motion for summary judgment, the court found that

> There is no evidence submitted by defendants in support of their earlier motion for summary judgment or in opposition to plaintiff's motion for summary judgment that supports a conclusion that their interest in promoting the efficiency of the performance of public services outweighs the interests of plaintiff in commenting on matters of public concern.

In fact, the court was under an obligation to look at the entire record (as it did), especially the materials which accompanied the defendants' previous motion for summary judgment. *Cooper*, 969 F.2d at 371; *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 930–32 (1st Cir.1983) (and cases cited); *Higgenbotham v. Ochsner Foundation Hospital*, 607 F.2d 653, 656 & n. 3 (5th Cir.1979); *E.E.O.C. v. Clay County Rural Telephone, Inc.*, 694 F.Supp. 563, 566 (S.D.Ind.1988).[4] As compared to these cited

---

4. This does not mean that the court must examine the entire record where the case is large and complex, become a "ferret," or otherwise look for "a needle in a paper haystack." *Stepanis-*

cases, in this case the defendants' position is even stronger because they notified the court of their evidence (and the *Pickering* argument) in their own motion for summary judgment.

■ Fourth, this is not a case where Glass could be surprised by the arguments that the defendants wish examined. *See DeValk,* 811 F.2d at 334. In general, we will not consider arguments which are presented for the first time on appeal. *Colburn v. Trustees of Ind. Univ.,* 973 F.2d 581, 588 (7th Cir.1992). But here, the district court considered the defendants' position and rejected it. Just because the defendants did not respond to Glass' motion for summary judgment does not allow him to state that the defendants raised their arguments "for the first time on appeal." The defendants have not raised any argument on appeal that was not properly before (and fully considered by) the district court on their motion for summary judgment.

## IV. The Merits

■ A police officer is primarily a public servant, with a myriad of attendant responsibilities. In that role, he cannot always act and speak as he pleases. This does not mean, however, that he loses all semblance of a private citizen just because he happens to have a government job. He maintains the freedom to speak out on matters of public concern, where such speech outweighs the police department's interests in satisfying the public's expectations. *See Pickering,* 391 U.S. at 563, 88 S.Ct. at 1731. Even if a police officer infringes speech, he will not be liable for damages where he reasonably thought, based on the law at the time, no constitutional violation would occur. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102

S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). These inquiries involve questions of law, which we review *de novo. Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990).

■ The district court granted summary judgment to Glass. This is appropriate only where "there is no genuine issue of material fact," Fed.R.Civ.P. 56(c), when viewing all of the evidence in the light most favorable to the nonmoving party. *Lohorn,* 913 F.2d at 331. That examination includes the record as a whole. *Whetstine v. Gates Rubber Co.,* 895 F.2d 388, 392 (7th Cir.1990). If the evidence is subject to different interpretations, summary judgment is not appropriate. *Cornfield v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1320 (7th Cir. 1993).

### A. Whether Speech a Matter of Public Concern.

■ We must first determine whether Glass' recorded comments to Wanish "cannot be fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1690 (1983); *Belk v. Town of Minocqua,* 858 F.2d 1258, 1262 (7th Cir.1988). This question involves an examination of the "content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690. Of these considerations, content is the most important. *Churchill v. Waters,* 977 F.2d 1114, 1121 (7th Cir.1992); *Yoggerst v. Hedges,* 739 F.2d 293, 296 (7th Cir.1984). *But see, Barkoo v. Melby,* 901 F.2d 613, 618 (7th Cir.1990) (the employee's motivation and choice of forum are also as important; otherwise, every employment dispute involving a public agency could be considered a matter of public

*chen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 930 n. 2 (1st Cir.1983). The district court might also apply a pertinent local rule that more explicitly defines the scope of waiver when no response is filed. *Id.* at 931–32. The court in this case did not apply any local rule, and the parties likewise have not raised the issue.

> And we accept the teaching that counsel should in general not take the risk of filing barely minimal memoranda and affidavits to guide the court through the record on a motion for summary judgment. It is always prudent for the party opposing summary judgment

> to offer affidavits establishing the unresolved material disputes or at least to provide the court with memoranda indicating where in the record those disputes are evidenced. It is likewise irresponsible for a party's attorney to neglect to do so in a case where the record is at all sizeable or complex.

*Id.* at 930. In this case the defendants' attorneys took a risk (knowing or unknowing) in not making at least a minimal response to Glass' motion for summary judgment. Had they waived the *Pickering* defense this case would likely have a different outcome on appeal.

concern). Although "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs," *Connick*, 461 U.S. at 149, 103 S.Ct. at 1691, matters of public concern do include speech aimed at uncovering wrongdoing or breaches of the public trust. *See Knapp v. Whitaker*, 757 F.2d 827, 840 (7th Cir.1985).

■ The Supreme Court has elevated speech on such public issues where "debate is vital to informed decisionmaking by the electorate." *Pickering v. Board of Education*, 391 U.S. 563, 572, 88 S.Ct. 1731, 1736, 20 L.Ed.2d 811 (1961). Obviously, speech that focuses on police departments (and ultimately police protection and public safety) involve matters of great public concern. *Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir.1990). The fundamental question in this case is whether Glass sought to bring Folska's possible theft of the lawn mower and its sloppy investigation to the attention of the public. If he simply sought to vent his own feelings about Dachel's handling of the matter, or was guided by an interest in securing the job of sheriff, his speech would not be protected. *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir.1985).

■ Dachel cites numerous cases where an employee was fired, not reprimanded, and argues that a reprimand does not rise to the level of constitutional significance. Not necessarily. If a reprimand letter addresses constitutionally protected speech, the plaintiff can establish an infringement of constitutional rights because of its deterrent effect. *Yoggerst v. Stewart*, 623 F.2d 35, 39 (7th Cir.1980); *McGill v. Board of Educ.*, 602 F.2d 774, 780 (7th Cir.1979); *Muller v. Conlisk*, 429 F.2d 901, 903 (7th Cir.1970) (the threat of sanctions can deter speech as much as actual sanctions). Whether the reprimand letter infringed speech does not even consider the degree of infringement. In some such cases damages would be nominal; but a minimal infringement nevertheless states a claim. *Stewart*, 623 F.2d at 39. *See Zook v. Brown*, 865 F.2d 887, 896 (7th Cir.1989).

Dachel also argues that Glass' telephone conversation with Wanish shows that Glass does not care for Dachel and is calling another co-employee to merely vent that dislike. As to content, however, we disagree. As the transcript of that conversation indicates, *supra*, we conclude as did the district court that Glass' comments concerning whether Folska had stolen a lawn mower and whether any departmental investigation would have been adequate can be fairly characterized as touching on matters of public concern. If Folska had stolen the lawn mower, his actions would have constituted wrongdoing and a breach of the public trust, *Ohse v. Hughes*, 816 F.2d 1144, 1151 (7th Cir.1987), *and after remand*, 863 F.2d 22, 24 (1988), which the Court in *Connick* recognized as protected. 461 U.S. at 148, 103 S.Ct. at 1690–91. *See Knapp*, 757 F.2d at 840; *Egger v. Phillips*, 710 F.2d 292, 317 (7th Cir.1983) (en banc).

As to form, Glass failed to take his complaints directly to the DCI and Enforcement Committee investigators; however, Glass apparently felt that by discussing the situation with Wanish, the DCI and Enforcement Committee would become aware of the situation. Glass also took his complaints to the Chippewa County district attorney (which Dachel did not criticize in the letter of reprimand). "This lends a public air to the form of these complaints." *Breuer v. Hart*, 909 F.2d 1035, 1038 (7th Cir.1990).

■ As to context, Glass' comments arose after he had lost the sheriff's election. His comments may have attacked the winner, but the primary focus of Glass' comments were on Folska, a fellow deputy, not on the sheriff. A personal stake in exposing the wrongdoing is not alone sufficient to declare that the speech does not also involve matters of public concern. Motive may be relevant, but not dispositive. *Id.* at 1038–39. Glass also commented to Wanish while off duty and at home. In context, this could show that the conversation was more of a personal nature; but because Glass knew that Wanish was talking to DCI investigators the following day, the fact that Glass was off duty and at home seems more a matter of convenience. Had the conversation not been recorded, the content would probably not have been exposed. Wanish's secret recording would probably limit the context of the conversation

had not Glass intended the information to be relayed to the DCI.

The test in *Connick* is not as heightened as the defendants would have us conclude. *See Rankin v. McPherson,* 483 U.S. 378, 397, 107 S.Ct. 2891, 2903, 97 L.Ed.2d 315 (1987) (summarizing speech cases on the question of matters of public concern); *Hedges,* 739 F.2d at 296 (the qualifications of the director of an Illinois state department would be a matter of public concern, such as whether he was "an ineffective administrator, that he failed to discharge his duties, or that he had committed some wrongdoing or a breach of the public trust"). Given the content, form and context of his telephone conversation, Glass' speech can be fairly characterized as touching on matters of public concern.

*B. The Pickering Balance.*

Our next step involves "weighing the interest of the public employee, as a citizen, in commenting upon matters of public concern with the interest of the State, as employer, in promoting effective and efficient public service." *Knapp,* 757 F.2d at 839 (the *Pickering* balance test).

> Several factors should be considered in this analysis, such as: (1) whether the speech impeded the employee's ability to perform her responsibilities; (2) the importance of close working relationships with superiors and co-workers; (3) the time, place, and manner in which the speech was delivered; and (4) the context in which the underlying dispute arose.

*Ohse,* 816 F.2d at 1151 (quoting *Knapp).* A slightly different statement of the test has evolved through a second set of cases; such considerations include

> (1) the need to maintain discipline or harmony among co-workers; (2) the need for confidentiality; (3) the need to curtail conduct which impedes the [employee's] proper and competent performance of his daily duties; and (4) the need to encourage a close and personal relationship between the employee and his superiors, where the relationship calls for loyalty and confidence.

*O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1371 (7th Cir.1993), *quoting Breuer v.*

*Hart,* 909 F.2d 1035, 1039–40 (7th Cir.1990); *Churchill,* 977 F.2d at 1123, *quoting Clark v. Holmes,* 474 F.2d 928, 931 (7th Cir.1972), *cert. denied,* 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973). The distinctions of wording are not significant in this case. Because the First Amendment gives persons real and important interests in speaking out on matters of public concern, the State's asserted interests must likewise be real and important. *Key v. Rutherford,* 645 F.2d 880, 885 (10th Cir.1981).

Again, Dachel focuses on the reprimand letter as so insignificant that any interest of the sheriff's department would trump Glass' freedom to speak out. Dachel understates the test. We are focusing on whether an infringement has occurred. The degree to which an employer reacts or the resulting damage have little to do with this question. *Stewart,* 623 F.2d at 39. Although Dachel has used one of the more moderate forms of discipline available, the issue is whether *any* discipline should have been forthcoming.

The primary dispute in this case involves whether Glass' speech so interfered with his working with Dachel, Folska, Wanish and other superiors and co-workers that public service was compromised.

> [P]ertinent considerations [include] whether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

*Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899. *Cf., Pickering,* 391 U.S. at 570, 88 S.Ct. at 1735. In *Rankin* the Court noted that the state did not even consider whether a remark interfered with the office operation or somehow discredited the office to the general public.

Here the defendants focus on the effect Glass' comments have upon the close working relationships with superiors and other workers in the sheriff's department. *See Ohse,* 816 F.2d at 1151. In the reprimand letter Dachel identified specific reasons for the dis-

cipline. Glass had gone outside his chain of command, had not reported to a responsible law enforcement authority and rather had complained only to a fellow officer.[5] Dachel implied that such actions threatened the discipline, loyalty, *esprit de corps* and uniformity of the department, ultimately jeopardizing the safety of the community. He also recommended that in the future, Glass should report his allegations through outside means. Boiled down, the entire tenor of Dachel's comments reprimanded Glass for speaking to Wanish, a fellow officer—complaints were to be taken elsewhere. Throughout his pleadings, Dachel also raises his interest in maintaining harmony and morale within the sheriff department. Significantly, Glass was not reprimanded because of the *content* of his speech. Taken at their face value, the interests asserted in the reprimand letter surely meet the standards needed for the operation of any law enforcement agency. *See Egger,* 710 F.2d at 319 (and the multitude of cases cited); *cf., Brockell v. Norton,* 732 F.2d 664, 669 (8th Cir.1984).

> Mutual trust and respect among agents and between agents and supervisory personnel are particularly important in law enforcement. The need for confidentiality cannot be gainsaid. And given the high stakes involved—sometimes life and death decisions are made—the risks of disharmony can be grave.

*Egger,* 710 F.2d at 319. And in *Breuer,* 909 F.2d at 1041:

> [T]here is a particularly urgent need for close teamwork among those involved in the "high stakes" field of law enforcement. Speech that might not interfere with work in an environment less dependent on order, discipline, and *esprit de corps* could be debilitating to a police force. Such considerations are permissible in weighing constitutional violations.

In that case we stated that "[h]ad Breuer conducted his investigation on his own time, without involving other members of the Department, he might credibly argue that these activities did not interfere with his work or

the work of others." *Id.* In this case, however, Glass took his complaints to Wanish, thus involving a coworker. As we framed the question in *Breuer, Yoggerst* and *Zook,* could the sheriff have reasonably calculated that Glass' speech to a fellow deputy, about another deputy, would create disharmony or impair discipline in his department?

Glass argues that he did not violate any departmental policy by addressing his concerns with Wanish. He could not very well take his concerns up the chain of command. Glass' immediate supervisor was Folska, who was being accused of stealing. Folska's supervisor was Dachel, who was being accused of a sloppy investigation. Glass chose Wanish because he was meeting soon with the DCI and Enforcement Committee investigators. And not until April 1992 did the sheriff's department establish a written policy of reporting suspected misconduct. Dachel replies that Glass simply should not have involved Wanish. The reprimand letter speaks of "outside means" involving suspected misconduct—obviously, Glass could have taken his concerns directly to the DCI or Enforcement Committee investigators or the media, rather than having Wanish be his messenger. In fact he did give a report to the district attorney, which is not at issue here.

Glass' conversation with Wanish took place on May 8, 1991. Dachel played the tape recording in front of the Enforcement Committee on July 8 and reprimanded Glass on August 7. He argues that Dachel has cited no evidence that the conversation caused any conflict in the department or disruption of its normal business operations, and no evidence that Glass' comments demonstrated a lack of fitness to perform his duties. If Dachel sincerely believed that Glass' conversation could disrupt the harmony and morale of the department, perhaps the tape recording of a private telephone conversation should not have been played for others in the department. After all, the protected speech had occurred while both men were at home, off-duty. (The record does not show who else heard the tape before the July 8 meeting.)

---

5. Although Glass had also reported the lawn mower incident to the county district attorney, Dachel's reprimand letter focused only on the

Wanish conversation. No comment was directed at the report to the district attorney.

Given the opposing interpretations, the parties are mistaken when they assert that the material facts are not in dispute. The district court erred in concluding this case based on a finding that "In May 1991 the Chippewa County Sheriff's Department had no policy concerning a chain of command for reporting suspected departmental misconduct." In Glass' motion for summary judgment, to which the defendants did not respond, he asserted that in May 1991 the sheriff's department had no policy concerning a chain of command for reporting suspected misconduct. Yet the reprimand letter and the various pleadings in the Record certainly assume that Glass violated a policy of reporting to the wrong person. Taking the inferences in favor of the defendants (the non-moving parties), the reprimand letter shows that such a policy had existed, or at least existed from that point forward. This in turn shows that the court intermingled the issues of whether a policy existed with what were the defendants' true reasons for the reprimand. These are two entirely different questions.

The district court should not reject the defendants' asserted reasons for the reprimand simply because Glass' comments did not cause any noticeable disharmony or otherwise hurt morale.[6] *Zook v. Brown,* 865 F.2d 887, 893 (7th Cir.1989) (the sheriff's department did not have to prove that its impartiality was actually compromised, only whether there *could have been* an unfavorable impact). A reasonable inference from the reprimand letter is that Dachel could have been concerned with the channel of communication and how deputies report suspected problems, not the narrow circumstance of the lawn mower involved here. Summary judgment for either party was

therefore inappropriate. *See Conner v. Reinhard,* 847 F.2d 384, 394 (7th Cir.1988).

▮▮▮▮ The defendants argue that the plaintiff bears the burden in establishing these findings, citing *Melton v. City of Oklahoma City,* 879 F.2d 706, 713 (10th Cir.1989). We note, however, that the Supreme Court unanimously placed the burden on the State in *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), a case involving the discharge of a public employee for the content of her protected speech. *Id.* at 388, 107 S.Ct. at 2899 (burden on the State "to demonstrate a state interest that outweighs [the employee's] First Amendment rights"), at 394, 107 S.Ct. at 2902 (even the dissent states that the State "must show that the employee's interest is outweighed by the government's"). Accordingly, the defendants must prove their asserted reasons for the letter of reprimand. *See Breuer,* 909 F.2d at 1039. Glass can certainly respond that these reasons are either untrue or pretexts for other non-legitimate reasons. This is not to say that the defendants must prove that their reasons were pursuant to an established policy at the time. There is no requirement that the state's interests involve only those pursuant to an established policy, or that it matters whether that policy be in writing. *See Connick,* 461 U.S. at 153, 103 S.Ct. at 1693 (the Court held that the government's interests outweighed the employee's First Amendment rights even where she had not violated any announced office policy).[7] In fact, on remand the district court and the parties may consider the procedures as discussed in Fed.R.Civ.P. 56(d) and conduct a trial on this single issue. If the defendants prove their reasons as asserted, they would prevail. *See Egger,* 710 F.2d at 319.[8]

---

**6.** A rule allowing police organizations to react to statements that could reasonably cause disharmony or hurt morale (although the statements turn out not to cause such problems) is not unfair. This rule is a corollary to protecting speech that does not, in fact, turn out to be truthful. *Pickering,* 391 U.S. at 574, 88 S.Ct. at 1737 (speech protected unless it contains false statements made knowingly or recklessly).

**7.** Obviously if the violation had involved a pre-established rule, the sheriff's department would

have a stronger case. *Connick,* 461 U.S. at 153 n. 14, 103 S.Ct. at 1693 n. 14.

**8.** As to the other factors mentioned in *Pickering, Ohse* and *Rankin,* there is no evidence in the record that Glass' comments impeded his job performance. As to the time, place, manner and context of the speech, Glass made his comments over the telephone to a fellow officer while both were off duty, at home. But Dachel reprimanded Glass for who he spoke to, not what he spoke about, or when. *Pickering,* 391 U.S. at 569–70, 88 S.Ct. at 1735 (question of supervisors main-

## C. Qualified Immunity.

As a final point, the defendants argue that they enjoy qualified immunity because they were performing a discretionary function which did not violate a clearly established constitutional right of which a reasonable person would have known. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

> Once the defendant's actions are defined or characterized according to the specific facts of the case this characterization is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law.

*Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.1988) (en banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1989). "[I]n light of pre-existing law, the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

▮ In this case the law has been sufficiently established to have put the defendants on notice that given the content, form and context of Glass' telephone conversation, his speech could be fairly characterized as touching on matters of public concern. *See Rankin,* 483 U.S. at 397, 107 S.Ct. at 2903; *Hedges,* 739 F.2d at 296. Conversely, the law is certainly established that the defendants do not violate the First Amendment if they were acting pursuant to superior interests, such as the effective and efficient operation of the sheriff's department. *See Connick,* 461 U.S. at 150, 103 S.Ct. at 1692; *Knapp,* 757 F.2d at 839; *Egger,* 710 F.2d at 319. Thus, this is not the usual qualified immunity case.

Facts are important. If the defendants show an issue of first impression, we tend to cloak the government with qualified immunity. *Greenberg v. Kmetko,* 922 F.2d 382, 385 (7th Cir.1991) (Cudahy, J., concurring) (and cases cited). But here, where the law is clearly established, the issue involves a defense on the merits. Once the court has determined why the defendants reprimanded Glass, the question of qualified immunity, indeed, of ultimate liability, falls into place. Because a material issue of fact remains, that is, what were the defendants' reasons for reprimanding Glass, qualified immunity cannot be decided as the record now stands. *Meyer v. Robinson,* 992 F.2d 734, 738–39 (7th Cir.1993); *O'Connor,* 985 F.2d at 1367; *Santiago v. Lane,* 894 F.2d 218, 225 (7th Cir. 1990) (law sufficiently clear under qualified immunity standards yet the case reversed because a material issue of fact remained disputed); *Reardon v. Wroan,* 811 F.2d 1025, 1030 (7th Cir.1987). As we remarked in *Elliott v. Thomas,* 937 F.2d 338, 342 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1242, 117 L.Ed.2d 475 (1992), it would be "silly" for us to comment on qualified immunity where the Constitution allows the defendants to do exactly what they have purported to do.

## V. Conclusion

The First Amendment protects Glass' comments on matters of public concern if they are not outweighed by the State's interest of promoting an effective and efficient police force. Under *Pickering,* the court is required to give "full consideration to the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick,* 461 U.S. at 150, 103 S.Ct. at 1692. Dachel contends that he felt that Glass' comments to Wanish should have been taken elsewhere in order to maintain the harmony and morale within the sheriff's department. Under the facts of this case, the district court made a premature credibility determination in discounting these reasons for reprimanding Glass and failed to give

taining discipline or harmony among coworkers may be presented where the statements are directed towards a person with whom the employee would normally be in contact). *Accord Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 414 n. 3, 99 S.Ct. 693, 696 n. 3, 58 L.Ed.2d 619 (1979). Nothing in the reprimand discourages Glass from speaking to investigators or the media. In fact, he was not repri-manded for having taken his complaints to the Chippewa County district attorney. This is the classic case of which the Court predicted—where the employee speaks publicly, the employer may find the content offensive; where he speaks privately, the issue also involves how and where the speech is delivered and the effect on the employer's legitimate interests. *Id.,* 439 U.S. at 415 n. 4, 99 S.Ct. at 696 n. 4.

"full consideration to the government's interest." For these reasons summary judgment in favor of Glass is REVERSED, and the case is remanded for further proceedings consistent with this opinion.