In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3611

CAROL KUCHENREUTHER, now known as
CAROL BURGOYNE,

Plaintiff-Appellant,

v.

CITY OF MILWAUKEE, MILWAUKEE POLICE
DEPARTMENT, and ARTHUR JONES, Chief,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 97 C 1320--William E. Callahan, Jr., Magistrate Judge.

Argued April 19, 2000--Decided July 20, 2000

Before POSNER, Chief Judge, COFFEY and EASTERBROOK,
Circuit Judges.

COFFEY, Circuit Judge. Carol M. Kuchenreuther,
an officer employed by the Milwaukee Police
Department, brought a claim under 42 U.S.C. sec.
1983 against the City of Milwaukee, Wisconsin,
and against its Police Chief Arthur L. Jones.
Kuchenreuther alleged that, in four separate
incidents, the defendants retaliated against her
for exercising her First Amendment rights. After
the district court/1 determined that on two of
the occasions, Kuchenreuther's speech was not
constitutionally protected and that on the other
two occasions, the defendants were not
responsible for violating Kuchenreuther's First
Amendment rights, the magistrate judge granted
summary judgment in favor of the defendants. We
affirm.

I. BACKGROUND

Officer Kuchenreuther has been employed as a
police officer by the City of Milwaukee,
Wisconsin, Police Department (MPD) since October
6, 1986. From November 1989 until September 21,
1997, Kuchenreuther was assigned as a patrol
officer to what is referred to as the late power
shift (midnight to 8:00 a.m.). During this same
time, Kuchenreuther served as a union steward for

the Milwaukee Police Association (MPA)./2 From February to September 1997, Kuchenreuther contends that, on four separate occasions, the defendants violated her First Amendment rights.

A.  The February 27, 1997 Bulletin Board Note

   The first incident involves a note that Kuchenreuther taped onto a bulletin board in her station house./3 On February 27, 1997, Kuchenreuther noticed an official memorandum from Chief Jones and Assistant Chief James W. Koleas attached to the MPA bulletin board encouraging MPD personnel to support the United Performing Arts Fund (UPAF)./4 Upon seeing this notice, Kuchenreuther used another police department form already on the bulletin board and wrote: "When you donate to U.P.A.F. you make the Chief and his Administration look good! Do you want to help that cause?"

   The next day, on February 28, 1997, Kuchenreuther found that her note had been removed. In fact, Sergeant Thomas Bohl, Officer Kuchenreuther's supervisor, had removed the note because he believed that her note violated MPD rules and because it was openly disrespectful of management.

   At that evening's roll call, Sergeant Bohl advised police officers not to post their personal opinions on the bulletin board. Kuchenreuther raised her hand, stated that she had placed the note on the bulletin board, and argued that, as a union steward with prior permission from MPA President Bradley DeBraska, she could place anything she wanted on the board. In response, Sergeant Bohl informed Kuchenreuther that he would refer the matter to Captain David J. Bartholomew.

   Captain Bartholomew, like Sergeant Bohl, believed that Kuchenreuther's note violated MPD rules both because it was not authorized by an MPD supervisor and because it was inappropriately disrespectful of the police chief. Later that same day, on February 28, 1997, Captain Bartholomew called the Internal Affairs Division (IAD), which ordered an investigation into the incident. IAD Sergeant Linda Haynes was assigned to investigate whether Kuchenreuther violated Department rules when posting the note.

   Five months later, the IAD completed its investigation. Sergeant Haynes concluded that Kuchenreuther had violated two Department rules because the note was written on MPD stationery and because it was posted without the prior approval of an MPD supervisor, in violation of MPD Rule 4, General Rules and Regulations

sec.sec. 2/350.00/5 and 2/385.00./6
Kuchenreuther answered IAD's charges by submitting a report to Chief Jones. But on December 18, 1997, Chief Jones issued a Personnel Order finding Kuchenreuther guilty of violating MPD rules and regulations, and disciplined her as follows: for using Department stationery for personal use, Kuchenreuther was given a District Reprimand; for posting the UPAF note without prior approval, Chief Jones suspended Kuchenreuther for two days without pay./7

B.  The March 5, 1997 In-Service Meeting

   The second incident in which Kuchenreuther alleges the defendants violated her First Amendment rights involves an argument between Kuchenreuther and Chief Jones. On March 5, 1997, Kuchenreuther attended an in-service session at the MPD Training Academy. At the in-service session, Chief Jones addressed the officers about his philosophy of running the MPD and the new programs he was instituting. When Jones invited questions from the officers, Kuchenreuther asked several questions about the Chief's policy authorizing officers to carry only one set of handcuffs. At some point, the Chief stated that he had "heard enough" and was not going to answer any more questions from Kuchenreuther on the handcuff issue./8

   Believing that Kuchenreuther had been inappropriately argumentative at the meeting, Chief Jones wanted to know if her notes of the meeting were appropriate and accurately depicted what had transpired at the meeting. So, after the meeting, Chief Jones directed Lieutenant Dennis Drazkowski to review Kuchenreuther's notes. Initially Kuchenreuther refused to allow Lieutenant Drazkowski to view her notes, but after she called Pat Doyle, a union representative at the MPA office, Kuchenreuther handed over her notes. Lieutenant Drazkowski photocopied the notes and returned the originals to Kuchenreuther within twenty minutes. Lieutenant Drazkowski reviewed the notes, found them to be appropriate and accurate, and turned them over to Inspector James R. Warren (the head of the training bureau where the in-service meeting was held). Warren called Chief Jones and informed him that Kuchenreuther was the officer taking notes, informed him that Kuchenreuther's notes were appropriate and accurate, and sent him a copy of the notes. No further action was taken concerning this issue.


C.  The Other Bulletin Board Notes

   The third incident in which Kuchenreuther

alleges the defendants violated her First Amendment rights involves four postings that Kuchenreuther placed on the MPA bulletin board from March to September 1997. First, on or about March 7, 1997, Kuchenreuther placed a handwritten note on the MPA bulletin board to inform MPA members of the March 11, 1997, MPA meeting./9 Sergeant Bohl removed Kuchenreuther's note, date-stamped and initialed it, and, within fifteen minutes after removing the note, placed it back on the bulletin board. Sergeant Bohl also advised Kuchenreuther that such items must be stamped and initialed by a supervisor prior to posting.

Next, on April 14, 1997, Kuchenreuther placed notes from the monthly MPA membership meeting on the MPA bulletin board. The next day, on April 15, 1997, Captain Bartholomew removed these notes both because he believed the notes were inappropriate and controversial and because the notes were neither date-stamped nor initialed by a supervisor./10 Captain Bartholomew then forwarded the notes to the IAD, but the IAD did not open an investigation into the matter.

Next, on May 17, 1997, Kuchenreuther posted the May MPA membership meeting notes on the MPA bulletin board./11 Kuchenreuther noticed that these notes were removed on or about May 24, 1997. Captain Bartholomew did not remember removing these notes, but admitted that they would have been removed if they were not authorized by a supervisor.

Finally, on September 17, 1997, Kuchenreuther discovered that a magazine article, reporting on a National Labor Relations Board ruling on free speech protection of employees,/12 which she had posted to the MPA bulletin board on September 10, 1997, had also been removed./13

D. Transfer to the Property Control Division

The final incident in which Kuchenreuther alleges the defendants violated her First Amendment rights involves her transfer from the patrol division to the property control division. On August 11, 1997, Kuchenreuther submitted a memorandum to Captain Bartholomew requesting that she be placed on the Day Shift Eligibility List. Captain Bartholomew forwarded Kuchenreuther's request to the Personnel Division, where MPD Personnel Analyst Valarie Watson responded to Kuchenreuther's request on August 15, 1997, and advised Kuchenreuther that she needed to complete a "Day Shift Questionnaire" before her transfer request could be processed. Kuchenreuther completed the Day Shift Questionnaire but left blank a section where officers are supposed to indicate their day shift assignment

preferences./14

   Deputy Inspector Roger Reinke, acting director
of the MPD Personnel Division, reviewed thirty-
four day shift requests, including
Kuchenreuther's./15 Because Kuchenreuther
failed to delineate a preferred assignment, and
because Reinke knew that the Property Control
Division needed additional officers, he submitted
an order transferring her there; Chief Jones
signed that order on September 19, 1997, and the
transfer became effective September 21, 1997. Her
title, basic pay, and benefits remained the same.
Nevertheless, Kuchenreuther found her new
position "less desirable" and viewed her transfer
as punitive.

## E.  Kuchenreuther's Lawsuit

   Approximately three months after her transfer,
on December 15, 1997, Kuchenreuther filed a
section 1983 action in the Eastern District of
Wisconsin, naming both the City of Milwaukee and
Chief Jones (in both his official and personal
capacities) as defendants. Kuchenreuther alleged
that the defendants violated her First Amendment
rights to freedom of speech and freedom of
association./16 Subsequently, both parties
moved for summary judgment. On September 22,
1999, the district court issued a decision
granting the defendants' motion for summary
judgment and dismissing Kuchenreuther's lawsuit.
Kuchenreuther appeals.

## II.  ISSUES

   On appeal, Kuchenreuther contends: 1) that the
district court erred in finding that her speech
was not constitutionally protected; and 2) that
the district court erred in finding that the
defendants were not responsible for violating her
First Amendment rights.

## III.  ANALYSIS
## A.  Standard of Review

   We review the district court's decision to
grant summary judgment de novo. See Weicherding
v. Riegel, 160 F.3d 1139, 1142 (7th Cir. 1998).
Summary judgment is appropriate when the
pleadings, depositions, answers to
interrogatories, admissions, and affidavits, if
any, demonstrate that there are no genuine issues
of material fact and the movant is entitled to
judgment as a matter of law. See Fed. R. Civ. P.
56(c). In determining whether a genuine issue of
material fact exists, we construe all facts in
the light most favorable to the party opposing
the motion and draw all justifiable inferences in
favor of that party. See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986). However, the mere existence of an alleged factual dispute between the parties is not sufficient to defeat a motion for summary judgment. See id. at 252.

B.  The Connick-Pickering Test

"It is clearly established that a State may not [retaliate against] an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, 483 U.S. 378, 383 (1987). A claim under section 1983 for retaliation in violation of the First Amendment requires a three-step analysis:

First, the court must determine whether the plaintiff's speech was constitutionally protected. If so, then the plaintiff must prove that the defendant's actions were motivated by the plaintiff's constitutionally protected speech. Finally, if the plaintiff can demonstrate that his constitutionally protected speech was a substantial or motivating factor in the defendant's actions, the defendant is given the opportunity to demonstrate that it would have taken the same action in the absence of the plaintiff's exercise of his rights under the First Amendment.

Kokkinis v. Ivkovich, 185 F.3d 840, 843 (7th Cir. 1999).

Initially we must determine whether Kuchenreuther has a protected First Amendment right under the Connick-Pickering test. See Connick v. Myers, 461 U.S. 138 (1983); Pickering v. Bd. of Educ. of Township. H.S. Dist. 205, 391 U.S. 563 (1968); see also Coady v. Steil, 187 F.3d 727, 731 (7th Cir. 1999). First, we must determine whether Kuchenreuther's speech can be "fairly characterized as constituting speech on a matter of public concern." Connick, 461 U.S. at 146. To involve a matter of public concern, Kuchenreuther's speech must "relat[e] to any matter of political, social, or other concern to the community." Id. Moreover, we examine each incident separately to determine whether any touched on a matter of public concern. See Gray v. Lacke, 885 F.2d 399, 411 (7th Cir. 1989).

If this hurdle is cleared, we apply the Pickering balancing test to determine whether "the interests of [Kuchenreuther], as a citizen, in commenting upon matters of public concern" outweigh "the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." See Connick, 461 U.S. at 142 (quoting Pickering, 391 U.S. at 568). The failure to

satisfy either prong of the Connick-Pickering test renders Kuchenreuther's section 1983 claim meritless.

C.  The February 27, 1997 Bulletin Board Note

The district court concluded that Kuchenreuther's February 27, 1997 note questioning UPAF payroll contributions failed the first prong of the Connick-Pickering test because the note did not address a matter of "public concern."/17 To determine whether speech addresses a matter of public concern, we look to the "content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48. Of these three factors, we have held that content is the most important factor. See Cliff v. Bd. of Sch. Comm'rs of the City of Indianapolis, 42 F.3d 403, 409 (7th Cir. 1994).

Initially, we note that the content of Kuchenreuther's bulletin board note is not a matter of public concern. Whether Milwaukee police officers make charitable contributions to the UPAF is not a matter of public concern. Cf. Balton v. City of Milwaukee, 133 F.3d 1036, 1040 (7th Cir. 1998) (holding that whether city firefighters contributed to an association was an issue of "purely individual economic importance"). This conclusion is bolstered by the fact that Kuchenreuther's note was not signed, and it was not written on MPA letterhead, but was instead written on the back of an MPD form. See Youker v. Schoenenberger, 22 F.3d 163, 166 (7th Cir. 1994). The conclusion that Kuchenreuther's note did not address a matter of public concern is further supported by looking to her motive in writing the note. See Button v. Kibby-Brown, 146 F.3d 526, 529 (7th Cir. 1998). In her August 22, 1997, written response to charges against her, Kuchenreuther states:

Clearly this issue, voicing my opinion and thoughts regarding solicitation of money for a nonprofit charitable organization, is a freedom-of-speech matter not dissimilar to the recent efforts by the Chief of Police soliciting donations for the United Negro College Fund . . . . The fact that I chose to use a discarded piece of paper from the recycling bin . . . and expressed my opinion by placing it on the Milwaukee Police Association bulletin board; results in an inconsequential difference identifiable between the Chief and I, that is the Chief supports a different or perhaps the same 501C(3)'s that I do . . . .

Further, I expressed my opinion on the MPA bulletin board not on the walls of the

department. I don't believe I need authorization to express my opinion from the Chief nor to place my thoughts on the MPA bulletin board.

(Emphasis added). According to Kuchenreuther's explanation, by writing and posting the note, she merely intended to express her displeasure with the MPD's efforts to encourage officers to make contributions to the UPAF through automatic payroll deductions from their paychecks.

For these reasons, we conclude that Kuchenreuther's note did not address a matter of public concern within the meaning of Connick. Accordingly, because it did not constitute constitutionally protected speech, the fact that the defendants disciplined Kuchenreuther in connection with this speech does not give rise to a First Amendment claim.

D.  The March 5, 1997 In-Service Meeting

As discussed previously, Kuchenreuther debated with the Chief over his policy of allowing police officers to carry only one set of handcuffs. Kuchenreuther contends that because the handcuffing issue concerns police operations, it is necessarily a matter of public concern. While speech addressing matters of police protection and public safety are matters of public concern, see Gustafson v. Jones, 117 F.3d 1015, 1019 (7th Cir. 1997); Campbell v. Towse, 99 F.3d 820, 828 (7th Cir. 1996); Glass v. Dachel, 2 F.3d 733, 741 (7th Cir. 1993), we have cautioned that "[i]f every facet of internal operations within a governmental agency were of public concern, and therefore any employee complaint or comment upon such matters constitutionally protected, no escape from judicial oversight of every government activity down to the smallest minutia would be possible." Berg v. Hunter, 854 F.2d 238, 242 (7th Cir. 1988). Furthermore, "courts should defer, whenever possible consistent with the Constitution, to the superior expertise of law enforcement professionals in dealing with their respective personnel." Egger v. Phillips, 710 F.2d 292, 328 (7th Cir. 1983) (Coffey, J., concurring in part), overruled on other grounds, Feit v. Ward, 886 F.2d 848 (7th Cir. 1989); see also Connick, 461 U.S. 151-52 ("When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate.").

The Supreme Court has stated that if a government employee speaks

not as a citizen upon matters of public concern, but instead as an employee upon matters only of

personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in retaliation to the employee's behavior.
Connick, 461 U.S. at 147; see also United States v. Nat'l Treasury Employees Union, 513 U.S. 454, 466 (1995) ("[S]peech that involves nothing more than a complaint about a change in the employee's duties may give rise to discipline without imposing any special burden of justification on the employer."). More recently, in Taylor v. Carmouche, this court held that "statements made in an employment setting about how the tasks should be carried out are appropriate subjects for reaction by management without constitutional obstacles." No. 99-3117, 2000 WL 675312, at *3 (7th Cir. May 24, 2000) (emphasis added).

After reviewing the record in this case, we are convinced that Kuchenreuther did not address the manner in which the police would serve the public as in Gustafson, Campbell, and Glass. Instead, in questioning Chief Jones' policy that police officers can carry only one set of handcuffs, Kuchenreuther was merely complaining about a change in equipment allocation. Consequently, we are of the opinion that Kuchenreuther addressed only an "'inside' matter pertaining to [her] work condition," Bonds v. Milwaukee County, 207 F.3d 969, 983 (7th Cir. 2000), and therefore Kuchenreuther's speech at the in-service meeting did not address a matter of public concern within the meaning of Connick.\18

E. March, April, May, and September 1997 Bulletin Board Notes

On appeal, Kuchenreuther contends that "the actions of District personnel to remove these postings occurred on Chief Jones' direction, making Chief Jones personally liable." Kuchenreuther argues that through "initiating an IAD investigation against [her] on the U.P.A.F. posting," Chief Jones established "his interpretation of the MPD rule concerning postings on MPD walls" which the supervisors were obligated to enforce.

However, Kuchenreuther ignores the fact that she was informed that all postings on the bulletin board required a supervisor's initials and stamp before they could be posted. Despite the fact that she was informed of the rules concerning posting, Kuchenreuther refused to follow police procedure and persisted on posting materials without the required stamp and supervisor's initials; consequently the notices were removed./19 Kuchenreuther's argument that she

was able to post anything she wished via the Union's negotiated agreement is immaterial to her constitutional claim. Consequently, we are of the opinion that the fact that Sergeant Bohl or Captain Bartholomew removed notices because they failed to comply with departmental posting requirements cannot give rise to liability under section 1983. See Milwaukee Police Ass'n v. Jones, 192 F.3d 742, 750 (7th Cir. 1999) (The Pickering test "recognizes the government's interest when acting as an employer in the efficiency of its workplace."); see also Bonds v. Milwaukee Co., 207 F.3d 969 (7th Cir. 2000).

F.  Transfer to the Property Control Division

   Finally, Kuchenreuther contends that, effective September 21, 1997, Chief Jones transferred her from patrol duty to the Property Control Bureau to suppress her First Amendment right of free speech and association.

   As discussed above, Kuchenreuther must establish a causal link between her protected speech and her transfer. That is, Kuchenreuther must demonstrate that her constitutionally protected speech was a substantial or motivating factor for the defendants' actions in transferring her. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Kokkinis, 185 F.3d at 843. As we have stated before, Kuchenreuther cannot prevail unless she "establishes that the defendant[s] would not have taken the challenged actions 'but for' the constitutionally protected conduct." Thomsen v. Romeis, 198 F.3d 1022, 1027 (7th Cir. 2000).

   Here, Kuchenreuther herself initiated her own transfer by submitting a request for a transfer to Captain Bartholomew. Furthermore, after she was told to fill out a questionnaire, she failed to indicate an assignment preference. According to Deputy Inspector Reinke, director of the MPD Personnel Division:

I slated [Kuchenreuther] for transfer to that [Property Control] section because she did not indicate any assignment preference on her Day Shift Questionnaire, a fact that I took at face value to indicate that she had no preferences, and because I understood Lieutenant Wierzba [in charge of the Property Control section] to need an additional able-bodied officer in Section . . . . Had Officer Kuchenreuther indicated an assignment preference, I would have chosen the only other officer, further down on the list, who did not indicate an assignment preference . . . .

We conclude that the cause of Kuchenreuther's

transfer to the Property Control Division was of her own making for she refused to comply with departmental rules dealing with transfer of duty assignments, and not the result of any constitutionally protected speech she might have engaged in. Accordingly, Kuchenreuther has failed to establish a First Amendment violation.

   The decision of the district court is

AFFIRMED.


/1 Pursuant to 28 U.S.C. sec. 636(c), the parties consented to proceedings before a magistrate judge.

/2 The MPA is the union representing non-supervisory police officers of the MPD.

/3 Through the collective bargaining process, the MPA has gained the ability to locate bulletin boards in conspicuous locations at each MPD district station. Article 45 of the Collective Bargaining Agreement in effect at the time of the incident stated:

The City will furnish bulletin boards at each district station and bureau. The material being placed upon such boards shall consist of official announcements of the Association, announcements of social events, Association election campaign material (provided that such material is non-controversial), results of Association elections, calls for Association elections; and any other matter approved by the Association, provided such other matter is non-controversial. It shall be the duty of the Association to keep the boards current and to remove obsolete material; the Association shall assign one or more stewards at each location for this purpose.

/4 UPAF is a charity organization that supports performing arts groups in the Milwaukee area.

/5 "[N]either shall there be hung upon the walls of any Department any calendar, poster, picture, advertising matters, or other things, except those relating to or essential for police purposes, without the approval of the Chief of Police."

/6 "Department stationery shall not be used for personal correspondence nor shall any Department property whatsoever be used for private purposes."

/7 Kuchenreuther alleges that it was particularly punitive for Chief Jones to suspend her on

January 5 and 6, 1998, because the MPA Trustee Election, in which Kuchenreuther was a candidate, was held on those days.

/8 The parties on appeal agree that after his presentation and question-answer session, Chief Jones seemed to be "mildly irritated."

/9 This posting was written on a piece of construction paper, and states: "meeting," the date of March 11, 1997, and "free beer."

/10  This posting, which consisted of two pages of typed double-spaced notes titled "Union Notes," makes a number of sarcastic comments about the MPD administration. For example, after stating that the Union hired two new lawyers, Kuchenreuther wrote: "Based on the way that this Administration does things, I'm sure that they will both be very busy."

/11 This posting consisted of three pages of typed double-spaced notes titled "Union Meeting Notes" with an additional three pages of attachments.

/12 This posting was a two-page photocopy of CFO & Controller Alert, Aug. 26, 1997, at 2, 6 (discussing Timekeeping Systems, Inc. v. Leinweber, 323 N.L.R.B. 244 (Feb. 27, 1997)).

/13 Captain Bartholomew did not remember removing this notice either.

/14 Kuchenreuther argues that she left the preference section blank because "she learned that if you told anyone where you wanted to work, you would never get that assignment." But in his affidavit, Deputy Inspector Reinke states that Kuchenreuther has specified position preferences in her past transfer requests.

/15 Only one other officer (Joann Sunn) of thirty-four officers on the Day Shift Eligibility List failed to indicate a shift preference. No officer requested transfer to the property control division.

/16 We evaluate free speech and free assembly claims under the same analysis. See Stagman v. Ryan, 176 F.3d 986, 999 n.3 (7th Cir. 1999).

/17 For the purposes of this opinion, we do not address whether the bulletin board in the workplace is a public forum.

/18 The fact that Kuchenreuther raised the issue of equipment allocation within the private confines of the Milwaukee police training academy bolsters our conclusion that Kuchenreuther's real concern relates to her employment. See Wales v. Bd. of

Educ. of Community Unit Sch. Dist. 300, 120 F.3d 82, 84 (7th Cir. 1997); Smith v. Fruin, 28 F.3d 646, 652 (7th Cir. 1994).

/19 It is unclear whether either Sergeant Bohl or Captain Bartholomew removed the May and September notices.